TUINEI of Masausi, AUMAVAE of Leone
and FATU of Leone, Plaintiffs

v.

IELIKO (Eric Ripley) of Leone, Defendant

No. 5-1940

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Matai Name: "Ilaoa" of Leone]

November 12, 1940

A. A. MORROW, *Chief Justice;* LIUFAU, *District Judge;* and MALEPEAI, *District Judge.*

Counsel for Ieliko: Makuati and Galeai
Counsel for Tuinei: Saipale
Counsel for Aumavae: Crossfield Hunkin (Kolose); also Eti on the second day of the hearing.
Counsel for Fatu: Eti.

MORROW, *Chief Justice.*

Since Fatu withdrew his objection and his candidacy during the course of the hearing, his rights, if any, to the matai name Ilaoa of Leone will not be considered.

 Formerly the law was to the effect that the High Court in a matai name case should award the name to the candidate with the best hereditary right. This law was changed in 1937 upon the recommendation of the Fono to read as follows:

"In the trial of Matai name cases, the High Court shall be guided by the following in the priority listed:

1. The wish of the majority of the family.

2. The forcefulness, character, personality, and leadership of the candidate.

3. The best hereditary right in which the male and female descendants shall be equal in the family where this has been customary, otherwise, the male descendant shall prevail.

4. The value of the holder of the Matai name to the Government of American Samoa."

Sec. 79(4A) of the Codification of the Regulations and Orders for the Government of American Samoa.

In this case each of the candidates filed a petition with the Clerk of the High Court signed by those members of the Ilaoa family favoring his candidacy. The petitions were received in evidence on the issue of the wishes of the family as to who should be its matai. There were 233 signatures on the petition of Ieliko (Eric Ripley), who throughout this decision will be referred to as Eric; 24 signatures on Fatu's petition and 64 on Tuinei's. There were 148 signatures on Aumavae's petition. In view of Fatu's withdrawal of his candidacy in favor of Aumavae we shall consider for the purpose of our decision (it can make no difference in the result) that the 24 signers for Fatu attached their signatures to Aumavae's petition although it was not made

clear to the court that such was the intention of Fatu and those members of the family backing his candidacy. We need not consider whether such backing may be transferred from one candidate to another during the course of the hearing since it is immaterial in this particular case, Eric having more members of the family backing him than has Aumavae, whether or not, the 24 backers of Fatu are counted for Aumavae. Five names on Aumavae's petition were questioned. Whether they were properly on the petition will not be considered since a consideration of the matter cannot affect the result, Eric having more names on his petition than Aumavae with or without the five questioned names.

In view of the fact that Eric has 233 signatures on his petition and Aumavae has only 172 (and this figure includes the 24 on Fatu's and does not exclude the 5 signatures on Aumavae's which were questioned) while there are but 64 signatures on Tuinei's petition, it follows that Eric prevails over both Aumavae and Tuinei on the matter of the wishes of the family as to who shall be its matai.

We shall next consider the "forcefulness, character, personality and leadership" of the candidates as the law requires us to do.

 The records of the District Court No. 2 reveal the fact that Tuinei was convicted of the crime of adultery in March of this year and that he was duly sentenced upon such conviction. The testimony in the present case shows that in response to the question "Have you ever been convicted in court of a public offence?" Tuinei, while on the witness-stand, answered "No." The evidence indicates that Tuinei is quarrelsome, gambles and his conduct is indicative of general unfitness to have the matai name Ilaoa. A man whose character is such that he will commit adultery, quarrel and gamble cannot command the respect of his family and the community at large which respect the

holder of a high name should have. Consequently his capacity for leadership will be limited. The name Ilaoa is attached to the village of Leone. It is significant that not a single member of the family residing in Leone signed Tuinei's petition although the evidence shows that more than 150 members of the family live there. Those members will be most affected by this decision. Tuinei testified that he has not lived in Leone since 1906 and that he visited Leone "very, very seldom." It is obvious that he is unfamiliar with family affairs, and other things being equal, is not in as good a position to assume leadership of the large Ilaoa family as a candidate who is familiar with family affairs.

Aumavae has been the pulenuu of Leone on a number of occasions. He has never been convicted of a public offence and neither has Eric. Both Aumavae and Eric live in Leone and are familiar with the affairs of the Ilaoa family. Eric is a leading carpenter at the Naval Station and earns $21.12 per week which amounts to more than $1,000.00 per year. He also cuts copra and makes Samoan curios, thereby supplementing his income as a carpenter in the Public Works Department by about $200.00 a year. In addition he does odd jobs as a carpenter adding still more to his income. Tuinei receives $60.10 per month as a retired Fita. He also sells plantation products as well as fish, mats and Samoan curios. However, his total annual income is less than that of Eric. Aumavae does not cut copra himself, due no doubt to the fact that his health is not very good. He does have some income from copra cut by members of his family as well as some additional income from the manufacture of Samoan curios. The evidence shows his income to be less than that of either Eric or Tuinei. We reach the conclusion from the evidence that Eric is in a better position financially than either Aumavae or Tuinei to assist the family in times of difficulty or disaster.

■ Both Tuinei and Aumavae have been matais for many years. Eric is not already a matai. Tuinei is 54 years old, Aumavae 50 and Eric 34. Aumavae is not well. Eric is in good health. It is obvious that Aumavae has passed the prime of life. Eric is, or soon will be, in the prime of life. Since Tuinei is a convicted adulterer and has other unfortunate traits of character and not quite one member in seven of the family wants him as the matai it is apparent to every member of the court that both Eric and Aumavae surpass him with respect to "forcefulness, character, personality and leadership." As between Eric and Aumavae we think in the light of all the testimony that Eric surpasses Aumavae with respect to these same matters. A 59 year old man who is not in good health is not in as good a position, other things being equal, to undertake the leadership of a large family as a man in good health who is 34 years of age. Eric is an industrious, skilled artisan and has a larger income with which to assist the family than has Aumavae. Eric speaks English well which is a decided asset should he desire to deal with the Government in behalf of the family. Our conclusion is that Eric prevails over both Aumavae and Tuinei on the issue of "forcefulness, character, personality, and leadership."

Eric is the grandson through his mother of Ilaoa Tuiloua. Consequently he has one quarter Ilaoa blood in his veins. Aumavae is the great-grandson of Ilaoa Aumavae. He has one eighth Ilaoa blood in his veins. Tuinei is the grandson of Ilaoa Taatofa. He has one fourth Ilaoa blood in his veins. There was no evidence that it had been customary in the family for the male and female descendants to be equal. Consequently Tuinei prevails over Eric and Aumavae on the issue of the hereditary right.

■ We shall now consider the last issue, viz., that of the "value of the holder of the matai name to the Government of American Samoa." Obviously the candidate who is best

qualified to undertake the mataiship will be the most valuable to the Government of American Samoa. The fact that Eric has more members of the family who want him to be the matai than either of the other two candidates indicates that he will be better able to lead the family than either of them; that he has already assumed a position of influence and leadership in the family; that he will be better able to consolidate the family into a unit and wipe out family dissensions occasioned by the selection of a new matai. Most of the lesser matais in the family favor Eric. This will be of assistance to him whereas by the same token it would be to the disadvantage of either of the other candidates in an attempt to consolidate the family into a peaceful, happy organization.

 The labor of Eric together with his copra and Samoan curios bring on the average more than $100.00 of money from the outside world into the islands every month. Aumavae does not cut copra himself. He does not have a job at the station. Some curios made by him bring money into the islands but the amount is very small in comparison with what Eric brings in. Tuinei's pay as a retired Fita together with money from his sales of curios, mats, and food does not amount to as much as Eric's income from the outside world. The more money brought into the islands from the outside world the better for the Government for, as the money is disseminated among aigas under Samoan custom, the more people there are who can pay their taxes. Eric, being a skilled carpenter, can teach and being a leading carpenter at the Naval Station does teach carpentering to other Samoans. The more skilled artisans there are among the Samoan people, the better it is for the Samoans and for the Government. Neither Tuinei nor Aumavae has any trade which they can teach to others. Since Eric speaks English the Government can deal with the family better through him than through a matai who does

not speak English. In view of what we have said, it is clear to all members of the court that Eric as the holder of the name will be the most valuable of the three candidates to the Government.

 It was claimed by the opposing candidates that Eric did not live as a Samoan because he wore European trousers while at work as a carpenter. At the hearing both candidates Tuinei and Aumavae were wearing European shirts, European coats, European belts, European neckties and lava lavas made from European cloth. The courtroom was filled with Samoans, both men and women, and the evidence showed, and the court could see for itself, that every one of them was wearing some European clothes, some more than others. Eric testified that he wore European trousers while at work and a lava lava when he went home in the evening to Leone. It is common knowledge that practically all, if not all, Samoans working for the Public Works Department wear European trousers while at work because they are a more convenient wearing apparel for an artisan than a lava lava. And this is particularly true in the case of a carpenter who needs pockets in which to put small tools, nails, a rule, etc., while at work.

We do not think the evidence disclosed that Eric did not live with Samoans as a Samoan because he wore trousers while at work. No doubt while attending functions as a matai he will wear the clothing usually worn by matais. We hold that he is qualified to hold a matai title so far as Sec. 81 of the Codification is concerned.

The court is unanimously of the opinion that Eric prevails over both the other candidates on the issue of the wish of the family as to who shall be its matai, the issue as to "forcefulness, character, personality, and leadership" and the issue as to the "value of the holder of the matai name to the Government of American Samoa." On the single issue of hereditary right Tuinei prevails over Eric be-

cause he is the grandson of an Ilaoa through his father while Eric is the grandson of an Ilaoa through his mother.

Since Eric prevails over both Aumavae and Tuinei on the first, second and fourth issues it follows that he is entitled under the law to be registered as the Ilaoa of Leone and the Registrar of Matai Titles will be advised to register him as such.

Costs here hereby assessed as follows: To Fatu $8.34; to Tuinei $20.83; to Aumavae $20.83. All costs are to be paid within 60 days.